**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **MAG. NO. 19-45 (RMM)** |
| | : | |
| **RIVES MILLER GROGAN,** | | |
| | | |
| **Defendant.** | | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Mark L. Goldstone, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Rives Grogan. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Grogan requests that the Court impose a variant sentence, consisting of a period of probation, and/or a period of home detention with work release privileges, based on the relevant 18 U.S.C. §3553(a) sentencing factors identified by Mr. Grogan's Probation Officer in the Pre-Sentence Investigation Report ("PSR"), including:

1.     The supporting analysis and facts contained within the PSR;

2.     The additional information and recommendations herein.

Taking all into consideration, the Court should impose a variant sentence, consisting of a period of probation, or a period of home detention with work release

1

privileges, which is proper and just under the facts and circumstances of Mr. Grogan's case.[1]

As more fully described herein, Mr. Grogan is fundamentally a good Christian person with an excellent reputation. Although he made an error in his personal judgement, he fully appreciates the standards of the criminal law. Consequently, it is unnecessary to protect the community from Mr. Grogan in the future by way of a period of incarceration.

Mr. Grogan's personal, religious and professional life are well characterized in the PSR. He is a man of faith in Jesus, and does not hesitate to speak out in public about his strongly held religious beliefs. He believes that it is his duty as a Christian to proclaim and preach the kingdom of Jesus everywhere. And he recognizes that this sometimes puts him in conflict with secular law and secular authorities. He specifically argues, that he has the First Amendment protections of freedom of Speech under the United States Constitution in that he has the right to practice his religion (Christianity) as Jesus Christ specifically said for his followers to go and proclaim **everywhere** the kingdom of God and that the police therefore by interdicting his speech are in a sense criminalizing his version of his requirement under Christianity.

He always acts and speaks non-violently, and uses his voice as his "weapon" to preach the dignity of life, and to call attention to the killing of unborn babies due to legalized abortion. Grogan believes that the Supreme Court by allowing abortion

---

[1]     It is believed Mr. Grogan is fully compliant with all conditions of his release.

since the 1973 decision in <u>Roe v. Wade</u>, has allowed for the murder of 60 million innocent babies. He feels called to bring attention to this murder, always in a non-violent fashion, in order to move towards a society where the killing of innocent babies is not lawful. The time that Grogan spent in jail for this charge already (two nights-approximately 48 hours in jail) and the cost of defending this case by traveling back and forth from Texas to Washington, D.C. has already served as a strong deterrent to Mr. Grogan from committing future crimes.

## I.   <u>Case Background and Trial</u>

On February 28, 2019, Mr. Grogan was charged in a one-count Information with the misdemeanor charge of Speech and Objectionable Language in violation of 40 U.S.C. § 6134.  That statute provides, "It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court building or grounds." 40 U.S.C. § 6134.  Mr. Grogan was found guilty of the single charge in a bench trial on July 11, 2019. Mr. Grogan's criminal history consists of non-violently speaking out in public places, all minor misdemeanors, and does not include any felonies, or any convictions for violence or property destruction. (Excepting one minor conviction for destruction of property for breaking a tree branch at the President Obama Inauguration in 2012, when he climbed up a tree overlooking the Inauguration Parade route and spoke out against abortion.)

Sentencing is scheduled for October 2, 2019, at 11:30 a.m.

## II.   <u>Legal Standard – The Post-Booker Sentencing Framework And Consideration Of The Non-Guideline Sentencing Factors</u>

In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2).[2] This represents a cap above which the Court is *statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77(3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part).

---

[2]

    18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

4

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

A.    **Nature and Circumstances of the Offense**

On February 28, 2019, Mr. Grogan was charged in a one-count Information with the misdemeanor charge of Speech and Objectionable Language in violation of 40 U.S.C. § 6134.  That statute provides, "It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court building or grounds." 40 U.S.C. § 6134.  On July 11, 2019, in a bench trial, Mr. Grogan was found guilty.

B.    **History and Characteristics of the Defendant.**

The Court must consider the specific history and character of the defendant

and the specific circumstances and seriousness of the offense and impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[3]

The PSR specifically identifies Mr. Grogan's stable family life, solid employment record, Christian faith and his lack of serious or violent criminal history as factors that may warrant favorable consideration in his case. The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Grogan also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR. (PSR ¶¶ 17-25).

Mr. Grogan is 54 years old and in "good" mental and physical condition. PSR ¶ 20. According to a report by the Department of Justice's Office of the Inspector General, inmates who are 50 years of age or older such as Mr. Grogan's age are more

---

[3]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

expensive to incarcerate and are less likely to re-offend after release. U.S. Department of Justice, Office of the Inspector General, <u>The Impact of an Aging Inmate Population on the Federal Bureau of Prisons</u>, i-iii (May 2015).

According to the report, older inmates are dramatically less likely to re-offend than younger inmates; specifically, it found that 15% of older inmates are rearrested within three years of release while 41% of young inmates are rearrested within three years of release. <u>Id.</u> at 38-40. Offenders who are between 50 and 54 years old (the bracket that Mr. Grogan is currently in) have a re-offense rate of only 19%. <u>Id.</u> at 39-40. The age bracket above that, 55-59, which Mr. Grogan will join in a few months, in May 2020, has a 16% re-offense rate. <u>Id.</u> The study supports sentencing Mr. Grogan to probation or a period of home detention based on his age.

Mr. Grogan has no serious criminal history and was a productive and law-abiding citizen for many years, despite convictions for non-violent civil disobedience prior to the pertinent conduct. PSR ¶¶ 21-23. Of the aging inmates in the above-mentioned study who were rearrested within three years of release, 86% had criminal history prior to the crime underlying the sentence studied. <u>The Impact of an Aging Inmate Population</u> at 41. Mr. Grogan has no serious criminal history reflecting crimes of violence or property destruction. PSR ¶¶ 4-17. The study supports a conclusion that Mr. Grogan is unlikely to re-offend based on his age and modest criminal history and therefore should be sentenced to probation or a minimal term of home detention.

The study also discusses the increased cost of housing older inmates. <u>The</u>

Impact of an Aging Inmate Population at i-ii, 10-16.

The cost of incarcerating Mr. Grogan would be grossly disproportionate considering the availability of alternative sentences that would be adequate to meet the §3553 sentencing goals. The study's evidence would support a sentence of probation, an alternative to incarceration, or home detention with work release privileges for Mr. Grogan based on his age and lack of a serious criminal history.

Mr. Grogan is the first of three children in his family and a God-fearing man, who has worked hard from a young age to help support his mother, his wife and his three children. PSR ¶¶ 19. His parents had a stable marriage and good jobs, and while the family sometimes struggled financially, their primary needs were met. Id. at ¶ 18.

Mr. Grogan has been married to his wife, Ms. Asa Lindgren Grogan, for 20 years. Id. at ¶ 71. She works in the clerical staff of the neo-natal unit of a hospital in Arlington, Texas. Id. at ¶ 19 Mr. Grogan and his wife have three living children (a son died at five months old in 2001), whom Mr. Grogan is close to and lives with his two high school age daughters and visits his college age son frequently at his college. Id. at ¶ 18-19. He enjoys life-long close relationships with his two siblings, who are each happily married with children and have good solid jobs. Id. at ¶17.

Mr. Grogan has no drug abuse issues or alcohol abuse issues and has not used either drugs or alcohol for the past 25 years. Id. at ¶ 20-21.

Mr. Grogan attained an Associate's Degree in Biblical Studies from California Union University. Id. at ¶ 21.

Mr. Grogan has been successfully employed his entire adult life, and achieved an Honorable Discharge after four years of service in the United States Navy.  He also had four successful years in the Navy Reserves. Id. at ¶ 23. He works currently as a health care worker in a senior health care facility and is also President and Pastor of a religious non-profit called New Beginnings Christian Discipleship, that ministers to the homeless and drug addicted. Id. at ¶¶ 21-22.

 Mr. Grogan has an extensive history of honest, hard work. Id. at ¶¶ 21-23. According to the PSR, ¶ 25, the maximum fine applicable in this matter is $5,000. 18 USC § 3571(b). However, in light of the challenging financial situation that Mr. Grogan is in, detailed in the PSR at ¶ 24, in which Mr. Grogan expressed that he is experiencing significant financial issues as a result of a number of the tenants at New Beginnings Christian Discipleship defaulting on their financial obligations which has caused his bills to increase and his income to decrease, it is submitted that the imposition of any hefty fine is not warranted.

Family members of Mr. Grogan attest to his respectable Christian character, including his devotion to his extended family, to his neighbors, to his religion, as well as his first-rate reputation as a productive and responsible member of his community. This will provide the Court with a unique perspective into the defendant's persona, reputation, accomplishments, and his keen desire to be a continued productive member of his community.

For example, the defendant's mother stated to the PSI writer that the defendant is a "Godly man that has taken care of people his entire life. He has three children

whom he loves, supports, and protects. He protests out of conviction from God." PSR ¶ 19

His wife, Asa Grogan described her husband as a "very honest person who follows his beliefs and convictions." She stated he is "very loving, trustworthy, very kind to all people, very patient, a great husband and an amazing Dad." PSR ¶ 19

She and the defendant's mother both stated that while Mr. Grogan is very firm in his convictions he is not violent or aggressive. PSR ¶ 19.

## C.  <u>Respect for the Law and Deterrence</u>

Mr. Grogan clearly understands that secular courts consider his actions illegal and under that construct he understands the "secular" wrongfulness of his conduct and he is therefore remorseful and ashamed for breaking the law, and he understands the conflict between the law as written in the District of Columbia code/United States Code, and his personal deeply held religious beliefs. Furthermore, given his lack of serious criminal history, his declining financial condition, his personal history and characteristics as described throughout this memorandum, it is improbable that he will participate in criminal activities in the future. As noted herein, Mr. Grogan has faced significant loss of income and a steep increase in his financial obligations, which serves as a material deterrent for him engaging in similar criminal conduct again.

In short, as discussed throughout this memorandum, there are numerous reasons to be optimistic that Mr. Grogan will not engage in further criminal behavior, including the support of his family & friends, the promise that others have seen in

him, as well as his own expected statements to this Court at the sentencing hearing about his conviction and the hope he has for his future. A prison sentence would have no greater effect toward the goals of sentencing than a sentence of a period of probation.

### D.   The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Grogan's conduct was deemed criminal by the Court. Any prison term would nonetheless be an inappropriate sentence for Mr. Grogan given his lack of significant prior criminal history and the relatively minor offense of speaking out in the Supreme Court building.

There are no reported cases of defendants who have committed similar crimes. The only reported case of a defendant (s) who was convicted of violating 40 U.S.C. § was United States v. Bronstein, 849 F.3d 1101 (D.C. Cir. 2017).

.

But it is very misleading and dangerous for this Court to look solely to Bronstein, as the facts are completely dissimilar. In Bronstein, after receiving a stern warning from a Supreme Court police officer about remaining silent while observing oral argument at the Supreme Court- 5 individuals stood up one after another as one was arrested and removed and either spoke out or sang loudly and were arrested for interrupting oral argument and the total "spectacle" lasted two to four minutes. Of the five defendants in Bronstein, while the Government, through AUSA Lisa Walters asked for a sentence of 10 days in Jail, the US District Court Judge Christopher Cooper instead sentenced them to either one weekend or two weekends in jail. See

11

Washington Post, July 24, 2017, Spencer Hsu, "Five Protesters Sentenced to a Few Days in Jail for Supreme Court disruption over Campaign Finance."

Here, in Grogan, we have one individual, acting alone, who did not enter the Courtroom, rather was in the hallway near the staircase a floor below the Supreme Court Courtroom, and was arrested within "seconds" (maybe 3 ½ seconds) of beginning to speak. Therefore, the sentence of even one or two weekends in jail given in Bronstein would not be appropriate. And it would not be recommended that this Court look to Mr. Grogan's prior convictions and sentences for objectionable speech at the Supreme Court (2007 conviction-received 5 days in jail, 2015 conviction-received 21 days in jail) PSR ¶¶ 5,12, as both of those cases involved Bronstein-like conduct INSIDE the Supreme Court Courtroom during oral argument of important, historic cases, and not in a public hallway inside the Supreme Court Building, a distance away from the actual Supreme Court Courtroom.

## III.   Defendant's Sentencing Proposal

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein and the recommendations of the PSR, Mr. Grogan respectfully asks this Court to use its discretion to devise a sentence that takes into consideration his age, lack of serious criminal history, and religious motivations for his conduct.

Mr. Grogan has had ample time to reflect on his actions at the Supreme Court. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Grogan was a law-abiding

and upstanding citizen for many years, despite minor convictions for civil disobedience, and there is nothing to suggest that he will be anything other than law-abiding moving forward.

At the sentencing hearing, Mr. Grogan will publicly express his heartfelt remorse that his actions amount to criminal conduct and he will apologize for his actions.

Mr. Grogan is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in a period of federal imprisonment. The potential loss of his liberty, including the devastating and irreparable consequences to his family, his aging mother, his senior citizen clients that rely upon him and the homeless and drug addicted clients he serves, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.

As argued herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, as well as the concerns of the court and the community, will be satisfied by the imposition of a sentence of a period of probation, or a period of home detention with work release privileges, deemed proper and just under the circumstances. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Grogan and for the community, the legitimacy of the offense for which he is being sentenced, despite his deep-seated religious convictions that he is obligated to speak

out against abortion in public.

Furthermore, there is a significant cost savings to the taxpayers of the United States if the Court imposes a period of probation, or home detention with work release privileges, rather than a term of incarceration. And, as discussed herein, a period of imprisonment would only serve to impede the intent of 18 U.S.C. §3553 (a). Accordingly, a sentence of a period of probation, or a period of home detention with work release privileges, appropriately provides just punishment and respect for the law. If the Court imposes a prison term, Mr. Grogan requests a short period of incarceration so that he may begin rebuilding his personal life and his religious life as soon as possible.

**WHEREFORE**, for the foregoing reasons and such other reasons that may appear just and proper, defendant Rives Grogan, respectfully requests the Court to impose a variant sentence, in consideration of the analysis contained with the Pre-Sentence Investigation Report, the 18 U.S.C. §3553 (a) sentencing factors, and the points and recommendations made herein, consisting of a sentence of a period of probation, or a period of home detention with work release privileges, deemed proper and just under the circumstances. To do otherwise would be manifestly unjust and a miscarriage of justice.

Respectfully submitted,

Mark L. Goldstone
Attorney for Mr. Grogan

By:   /s/ Mark L. Goldstone

    Mark L. Goldstone
D.C. Bar No. 394135
Attorney at Law
1496 Dunster Lane
Rockville, Md 20854
Telephone: (301)-346-9414
E-mail mglaw@comcast.net

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon counsel of record for the Government, Ms. Lisa Walters, and to USPO Kathie Mc Gill, via the Electronic Case Filing (ECF) system, this 16th day of September, 2019.

    /s/

    Mark L. Goldstone
D.C. Bar No. 394135
Attorney at Law
1496 Dunster Lane
Rockville, Md 20854
Telephone: (301)-346-9414
E-mail mglaw@comcast.net